UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS B., an Individual,<br><br>            Plaintiff,<br><br>            v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>            Defendant. | Case No.: 5:18-01051 ADS<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I. **<u>INTRODUCTION</u>**

Plaintiff Curtis B.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The complaint, and thus the docket, do not name the Commissioner of Social Security. On June 17, 2019, Saul became the Commissioner. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

of his application for supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his application for social security benefits, Plaintiff last worked in June 2005 as a cook for Boston Market. (Administrative Record "AR" 21, 174-75.) Plaintiff alleges his medical condition became severe enough to keep him from working on January 1, 2012. (AR 21-22, 174). His claim for disability was based on his reverse spine, back problems, migraine headaches, nerve damage, and high blood pressure. (AR 174). Plaintiff further alleged that his pain and restlessness increased after filing the application. (AR 231). He stated that some days he can bathe himself, but other days his wife and children have to care for him and the house because he's in so much pain. (AR 203). Plaintiff indicated that he "just sit[s] around in pain," and the pain makes it difficult for him to take care of his personal needs. (AR 21, 203, 235). He alleged that he has been treated for physical and mental problems, and his medication causes side effects, including dizziness and drowsiness. (AR 21, 202, 232, 234).

Plaintiff first saw Sarah L. Buenviaje-Smith, M.D. on May 14, 2013, for pain management of his neck, low back, arm, leg, and joints, and for headaches. (AR 344, 384). Dr. Buenviaje-Smith examined him and made a number of findings. (AR 347). She diagnosed Plaintiff with lumbar and cervical radiculopathy, lumbar and cervical facet joint disease, and cervical stenosis. (Id.).

On May 29, 2013, Plaintiff returned to Dr. Buenviaje-Smith. (AR 343). He was examined, given an injection, and his Norco medication was increased. (Id.).

On July 24, 2013, Plaintiff saw Dr. Buenviaje-Smith again. (AR 342). He was examined, his medications refilled, and he was given another injection. (Id.). On August 21, 2013, Plaintiff complained of increased pain in the lower back, left leg, and neck. (AR 361). Dr. Buenviaje-Smith made findings, increased one of his medications, and gave him another injection. (Id.).

Plaintiff saw Dr. Buenviaje-Smith again on September 25 and October 23, 2013. (AR 359-60). Examination findings were unchanged, and he received injections. (Id.). On November 20 and December 18, 2013, Plaintiff was seen again by the doctor, and his medications were refilled. (AR 357-58). On January 15, 2014, Plaintiff again returned to the doctor, she made findings, he was given an injection, and advised to take part in physical therapy. (AR 356).

On February 12, 2014, Plaintiff reported physical therapy increased his pain. (AR 427). He was given injections. (AR 428). On March 5, March 13, and April 9, 2014, Plaintiff was given additional injections. (AR 417-19, 421). On May 8, 2014, Dr. Buenviaje-Smith performed a medial branch nerve block procedure on Plaintiff. (AR 414-15).

On June 5, 2014, Plaintiff reported to Dr. Buenviaje-Smith a 70 percent improvement in pain after nerve block injections, but lasting about four or five days. (AR 412). The doctor performed an examination, made findings, and gave him an injection. (Id.). Plaintiff was given Valium, and two medications, Tizandine and Elavil, were increased. (AR 413). A lumbar radiofrequency ablation was also scheduled. (Id.).

On July 31, 2014, Plaintiff underwent lumbar radiofrequency ablation on the left. (AR 411). On August 14, 2014, Plaintiff underwent lumbar radiofrequency ablation on the right. (AR 409).

On October 2, October 30, and December 23, 2014, and January 22, February 18, 2015, Plaintiff saw Dr. Buenviaje-Smith, was prescribed new medications, and received injections. (AR 397-98, 401, 403, 405-06).

On March 26, 2015, Plaintiff reported to Dr. Buenviaje-Smith good relief from injections lasting a few weeks. (AR 395). Plaintiff, however, also reported seeking emergency treatment after a fall two weeks prior, and 8/10 aching pain in his low back and left leg. (Id.). He was given injections during the visit. (AR 395-96).

On April 17, 2015, Dr. Buenviaje-Smith completed a Residual Functional Capacity ("RFC") Questionnaire. (AR 383-85). The doctor opined that Plaintiff could walk less than one block without resting or significant pain, could only sit, stand or walk for 45 minutes at a time, could only sit for four hours total per workday and stand/walk for only two hours total per workday, and would need to take unscheduled breaks every two hours. (AR 385). She found that Plaintiff could lift and carry 10 pounds occasionally and could never lift more than 20 pounds. (Id.). She found that Plaintiff had limitations in repetitive reaching, handling, and fingering. (Id.). She noted that Plaintiff was not a malingerer. (Id.). She opined that Plaintiff was likely to be absent from work more than four times per month. (Id.). She concluded that she did not believe Plaintiff was physically capable of working an eight-hour day, five days a week, on a sustained basis. (Id.).

On July 15, 2015, Plaintiff had another right lumbar radiofrequency ablation. (AR 525-26). On July 29, 2015, Plaintiff had another left lumbar radiofrequency ablation. (AR 522, 524). On September 9, November 4, and December 14, 2015, Plaintiff received injections. (AR 514, 517, 520).

On January 28, 2016, Plaintiff requested from Dr. Buenviaje-Smith another lumbar radiofrequency ablation. (AR 510). He was given injections and prescribed Soma. (AR 511). On February 25, 2016, Plaintiff was given lumbar nerve blocks and prescribed Cyclobenzaprine. (AR 507-09). On March 10, 2016, Plaintiff was given lumbar nerve block injections. (AR 504-06).

On April 7, 2016, Dr. Buenviaje-Smith gave him an injection. (AR 503). On May 19, 2016, she gave him trigger-point injections. (AR 501,). On July 14, 2016, she gave him B12 injections. (AR 499).

On September 14, 2016, Plaintiff reported to Dr. Buenviaje-Smith continuing pain and that physical therapy was not helping. (AR 496). He was given B12 injections and authorization was requested for cervical facet injections. (AR 497). On October 12, 2016, Plaintiff was unable to lie down on the examination table for an injection due to pain. (AR 494). He was prescribed Robaxin. (AR 495). On November 9, 2016, Dr. Buenviaje-Smith gave him paravertebral facet joint injections. (AR 492-93).

### III. **PROCEEDINGS BELOW**

#### A. **Procedural History**

Plaintiff protectively filed his application for SSI on September 2, 2014, alleging disability beginning January 1, 2012. (AR 16, 148-52, 154-61). The application was denied initially on January 2, 2015 (AR 65), and upon reconsideration on July 7, 2015 (AR 83). A hearing was held before ALJ Norman L. Bennett on January 27, 2017. (AR 32-53). Plaintiff, represented by counsel, appeared and testified at the hearing, as well as a vocational expert. (Id.).

On April 17, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[3] (AR 16-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on March 16, 2018. (AR 1-5). Plaintiff then filed this action in District Court on May 16, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

On October 9, 2018, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 17, 18]. On November 18, 2018, Plaintiff filed a Memorandum in Support of the Complaint. [Dkt. No. 19]. On March 21, 2019, the Commissioner filed a Memorandum in Support of the Answer. [Dkt. No. 27]. On April 4, 2019, Plaintiff filed a Reply. [Dkt. No. 28]. The case is ready for decision.[4]

### B. <u>Summary of ALJ Decision After Hearing</u>

In the ALJ's decision of April 17, 2017 (AR 16-27), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 416.920(a)(4). At **step one**, the ALJ found that

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 10, 13].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the RFC to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

Plaintiff had not engaged in substantial gainful activity since September 2, 2014, the application date. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) obesity; (b) degenerative disc disease of the lumbosacral spine; and (c) degenerative disc disease of the cervical spine. (AR 18).

At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926." (AR 18). The ALJ then found that Plaintiff had the RFC[6] "to perform a full range of sedentary work as defined in 20 CFR 416.967(a)"[7]. (AR 21).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a short order cook. (AR 26).

At **step five**, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience[,] and [RFC], there were jobs that existed in significant numbers in the national economy that he was able to perform," and that a finding of "not disabled" was directed by Medical-Vocational Rule 201.25. (AR 27). As such, the ALJ concluded

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[7] "Sedentary work" is:
>   lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a); see also Casey H. v. Berryhill, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

Plaintiff was not under a disability, as defined in the Social Security Act, since the protective filing date of September 2, 2014. (Id.).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review, whether the ALJ: (1) properly rejected the treating physician opinion of Dr. Buenviaje-Smith; and (2) erred by failing to include any mental limitations in the RFC.[8] [Dkt. No. 19, p. 3]. For the reasons below, the Court agrees with Plaintiff that the ALJ failed to properly consider the treating physician opinion, and remands on that ground.

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and

---

[8] The Court addresses the claims in a different order than presented by Plaintiff.

internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

### C. **The ALJ Failed to Properly Consider the Opinion of Plaintiff's Treating Physician**

Plaintiff contends the ALJ erred in rejecting the RFC questionnaire and opinion of treating physician Dr. Buenviaje-Smith. [Dkt. No. 19, pp. 22-27; Dkt. No. 28, pp. 4-5].

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F.R. § 416.927(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting

Bayliss, 427 F.3d at 1216). In Trevizo, the Ninth Circuit addressed the factors to be considered in assessing a treating physician's opinion.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Id. § 404.1527(c)(2)-(6)."

871 F.3d at 675.

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

### 2. The ALJ Failed to Provide Specific and Legitimate Reasons, Supported by Substantial Evidence, for Rejecting the Opinion of Dr. Buenviaje-Smith

Here, the ALJ did not summarize Dr. Buenviaje-Smith's RFC questionnaire, or discuss the limitations assessed in her opinion. (AR 25). The ALJ simply assigned the questionnaire "little weight" because:

> This doctor is a general practitioner and, therefore, her opinion rested, at least in part, on the assessment of impairments outside her area of practice. Further, her own reports failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the [Plaintiff] were in fact disabled, and the doctor did not specifically address this weakness. In addition, her opinion contrasted sharply and was without support from the other evidence of record, which rendered it less persuasive.

(AR 25).

Regarding the first reason—that the doctor's opinion was allegedly outside her area of practice—Plaintiff points out that Dr. Buenviaje-Smith is triple board certified in pain management, anesthesiology, and palliative care[9] and hospice medicine. [Dkt. No. 19, p. 26]. Plaintiff saw her for pain, and she treated him for pain, an area clearly within her expertise. Indeed, the Commissioner does not refute the doctor's credentials, or attempt to defend this as a valid reason for discounting the opinion. See, e.g., Kinley v. Astrue, 2013 WL 494122, at *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response."). Accordingly, the first reason is not a specific and legitimate reason for discounting the opinion. See Lester, 81 F.3d at 830-31; Valdez-Canez v. Colvin, 2017 WL 2351664, at *7 (D. Ariz. May 31, 2017) ("a physician's opinion cannot be disregarded simply because it addresses a topic outside his or her expertise").

---

[9] "Palliative care is specialized medical care that focuses on providing patients relief from pain and other symptoms of a serious illness, no matter the diagnosis or stage of disease." See Palliative care, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/palliative-care/about/pac-20384637 (last visited November 20, 2019).

The second reason is also deficient. Although the ALJ mentioned some of Dr. Buenviaje-Smith's records earlier in the decision, (AR 24), it is unclear in his analysis of her opinion how he concluded that they did not reveal "significant clinical and laboratory abnormalities." (AR 25). The ALJ mentions no treatment records in his evaluation of the opinion, and the record as a whole does not support his conclusion. As detailed above, Plaintiff routinely met with Dr. Buenviaje-Smith, she examined him, made detailed findings, and treated him with medication, injections, and other procedures. In the opinion, she specifically noted her treatment of Plaintiff for nearly two-years, "at least monthly." (AR 383-84). Accordingly, the ALJ's second reason is not a specific and legitimate reason to discount the opinion. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citations omitted) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

The third and final reason is similarly deficient. The decision fails to explain how the opinion "contrasted sharply" and was "without support from the other evidence of record." (AR 25). The ALJ does not identify what "other evidence" he relied on in discounting the opinion, thus leaving nothing for the Court to review. See Brown-Hunter, 806 F.3d at 492; Blakes, 331 F.3d at 569. Accordingly, the ALJ did not meet his burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. As such, the Court reverses the ALJ's finding that Dr. Buenviaje-

Smith's opinion is entitled to little weight and remands for reassessment of the appropriate weight consistent with this decision.

### D. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); see also Alderman v. Colvin, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and give appropriate consideration to physician's opinions, step-two findings, and step-five analysis); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). Because it is unclear whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The parties may freely take up all issues raised in the briefing before the Court, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

### E. Remand For Further Administrative Proceedings

Remand for further administrative proceedings, rather than an award of benefits, is warranted because further administrative review could remedy the ALJ's errors. See Brown-Hunter, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). On remand, the ALJ shall properly review and evaluate the treating physician opinion and reassess Plaintiff's RFC. The ALJ shall then proceed

through steps four and five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. **ORDER**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order. Judgement shall be entered accordingly.

DATE: March 19, 2020

                     /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge